**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **EDUARDO ODANYS PEREZ RODRIGUEZ,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. CIV-26-1497-G** |
| **WARDEN DIAMONDBACK CORRECTIONAL FACILITY, et al.,** | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Eduardo Odanys Perez Rodriguez, a noncitizen[1] and Venezuelan national proceeding pro se, filed a Petition for Writ of Habeas Corpus ("Petition"), Doc. 1, challenging under 28 U.S.C. § 2241 his detention by U.S. Immigration and Customs Enforcement ("ICE"). United States District Judge Charles B. Goodwin referred this matter to the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). Doc. 3. The undersigned set an expedited briefing schedule, Doc. 7, and the Petition is at issue. For the reasons set forth below, the undersigned recommends that the Court grant the Petition, Doc. 1, in part and order Respondents to provide Petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days or otherwise to release him if there is no hearing within that time.

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

## I. **Background**

Petitioner, a citizen of Venezuela, entered the United States without inspection on or about August 29, 2023, near Eagle Pass, Texas. Resp. at 1; Doc. 9-1 at 1 (Notice to Appear). On September 1, 2023, ICE placed Petitioner into removal proceedings before the Immigration Court pursuant to 8 U.S.C. § 1229a through the issuance of a Notice to Appear and charged him with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection. Resp. at 1-2; Doc. 9-1 at 1. At an unspecified time, Petitioner applied for asylum and withholding of removal.

On March 17, 2025, Petitioner pleaded guilty in the District Court of Tulsa County, Oklahoma to three misdemeanor offenses: (1) Aggravated Driving Under the Influence of Alcohol, (2) No Valid Driver's License, and (3) Transporting an Open Container. Resp. at 2; Doc. 9-4. He received a one-year deferred sentence. Doc. 9-4 at 6.

On February 2, 2026, ICE detained Petitioner after his arrest for misdemeanor traffic violations in Creek County, Oklahoma. Resp. at 2; Doc. 9-3 (Warrant for Arrest). Petitioner does not allege he requested a bond hearing. Such a request, though, would likely be futile because all Immigration Judges ("IJs") are subject to the binding precedent of *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025), which holds those noncitizens who entered the country without admission or parole are ineligible for a bond hearing.

On June 17, 2026, an IJ ordered Petitioner removed and denied his application for asylum and withholding of removal. Resp. at 2; Doc. 9-5 at 1; *see also* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/ (last accessed Sept. 9, 2026). On July 15, 2026, Petitioner appealed the removal order to the Board of Immigration Appeals

("BIA"). Resp. at 2; EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/ (last accessed Sept. 9, 2026). Therefore, the removal order is not yet final under 8 C.F.R. § 1241.1.

When Petitioner filed his Petition, he was detained at Diamondback Correctional Facility in Watonga, Oklahoma. Pet. at 1. He remains detained there. *See* ICE Online Detainee Locator System, *at* https://locator.ice.gov/odls/#/results (last visited Sept. 9, 2026).

## II. <u>Petitioner's Claims</u>

Petitioner challenges his "continued immigration detention without a meaningful bond hearing and denial of release despite strong family, community, and humanitarian factors." Pet. at 2 (citation modified). As grounds for relief, he claims he "has family support, a stable residence upon release and strong ties to the community," and "is not a danger to the community and does not represent a flight risk." *Id*. at 6 (citation modified). Petitioner alleges he has not filed an administrative appeal "because he remains in immigration detention and has not been provided a meaningful opportunity to challenge his continued detention through a bond hearing." *Id*. at 2.

The undersigned liberally construes Petitioner's allegations to challenge his continued detention without a bond hearing pursuant to 8 U.S.C. § 1226(a).[2] He asks the

[2] In the untimely Reply, Petitioner clarifies his claim to argue (1) § 1226(a) governs his current detention and (2) his prior DUI conviction does not "defeat" his right to a bond hearing under § 1226(a). Reply at 2-3. Because the undersigned liberally construes the Petion to seek a bond hearing under § 1226(a), the undersigned need not consider these arguments raised for the first time in the Reply.

Court to "require Respondents to justify [his] continued detention" and to "order an immediate custody review or bond hearing." Pet. at 7.

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Analysis

### A. Petitioner sufficiently states a claim for relief.

At the outset, the undersigned is not persuaded by Respondents' assertion that Petitioner fails to sufficiently allege a claim for relief. Resp. at 7-8. Respondents assert he "fails to state with specificity all the grounds for relief available to him and state the facts supporting each ground." *Id*. at 7. First, Petitioner is proceeding pro se, meaning his filing must be liberally construed. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). When reading the Petition as a whole, it is clear Petitioner is challenging Respondents' decision to detain him without an individualized bond hearing. *See* Pet. at 2 (challenging "continued immigration detention without a meaningful bond hearing and denial or release"); *id*. (explaining he has not administratively appealed because "he has not been provided a meaningful opportunity to challenge his continued detention through a bond hearing").

Further, Respondents' assertion is belied by their own pleading. Respondents were indeed able to respond substantively to the Petition, which does not raise novel issues or

questions of law from those recently considered by this Court. *See, e.g., Ping v. U.S. Dist. Ct.*, No. CIV-26-646-R, Doc. 12 at 2 (W.D. Okla. Apr. 29, 2026) (dismissing respondents' motion to dismiss and noting "Respondents' ability to make a merits-based argument in opposition to Petitioner's requested habeas relief belies their contention that they are unable to identify or respond to the claims"). Accordingly, the undersigned finds it clear Petitioner challenges his immigration detention without a bond hearing and alleges he is properly detained under 8 U.S.C. § 1226.

**B. Petitioner did not need to exhaust administrative remedies.**

Respondents next argue Petitioner "failed to exhaust his administrative remedies by failing to complete the process of requesting a custody determination before the [IJ]." Resp. at 9. However, "exhaustion requirements do not always apply to challenges to immigration detention brought in habeas proceedings," and an immigration habeas petitioner "is not required to request a bond redetermination hearing before filing his Petition." *Miranda v. Mullin*, No. CIV-26-1004-D, 2026 WL 2390961, at *1 (W.D. Okla. Aug. 17, 2026) (citing *Soberanes*, 388 F.3d at 1310). While generally "the exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief," "the statute itself does not expressly contain such a requirement." *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) (citation modified). "Nor does 8 U.S.C. § 1226(a) contain any express exhaustion requirement." *Miranda*, 2026 WL 2390961, at *1; *see also Salvador F.-G. v. Noem*, No. 25-CV-0243, 2025 WL 1669356, at *6 (N.D. Okla. June 12, 2025) ("[Section] 1226 contains no clear rule that requires exhaustion of administrative remedies."); *Repela v. ICE Field Off. Dir. - Denver Field Off.*, No. 26-CV-00552, 2026 WL 776123, at *2 (D.

Colo. Mar. 19, 2026) (finding "neither the statutory language of § 1226 nor the habeas statute" expressly contains an exhaustion requirement).

In an immigration habeas matter, "exhaustion is typically nonjurisdictional, and courts treat a rule as jurisdictional only if Congress clearly states that it is." *Salvador F.-G.*, 2025 WL 1669356, at *6 (citation modified); *accord Gonzales v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (explaining administrative exhaustion applies to challenges of final orders of removal but not to challenges to preliminary custody or bond determinations). "Where Congress has not clearly required exhaustion," making it nonjurisdictional, "sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), *superseded by statute on other grounds as stated in Woodford v. Ngo*, 548 U.S. 81 (2006) (citation modified).

As such, "even though a noncitizen detained pursuant to § 1226 *may* request a bond hearing, they are not *required* to do so before they can pursue § 2241 habeas relief." *Repela*, 2026 WL 776123, at *2. This is also consistent with district courts in the Tenth Circuit consistently using "sound judicial discretion to find exhaustion unnecessary" for noncitizens seeking a bond hearing. *Molina Ochoa v. Noem*, No. CIV 25-0881, 2026 WL 1256556, at *44-45 (D.N.M. May 7, 2026) (concluding a petitioner "does not need to exhaust administrative remedies" before seeking a bond hearing when respondents argued petitioner was detained under § 1225(b)(2)). Likewise here, where Respondents contend Petitioner faces mandatory detention under § 1226(c), they cannot credibly claim he should exhaust administrative remedies to seek a bond hearing they separately allege is not available to him.

In sum, the undersigned is "not convinced that Petitioner is required to exhaust his administrative remedies before the Court can order habeas relief." *Repela*, 2026 WL 776123, at *2. When neither § 2241 nor § 1226(a) clearly requires exhaustion, the Court should exercise its judicial discretion and conclude Petitioner was not required to request a bond redetermination hearing before filing his Petition.

**C. Section 1226(a) applies to Petitioner's detention.**

Next, because the undersigned construes Petitioner to be alleging a violation of the Immigration and Nationality Act ("INA") in his Petition, the Court must determine which provision governs his current detention. The two sections of the INA at issue that govern detention of noncitizens pending removal proceedings are 8 U.S.C. §§ 1225 and 1226. Section 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." *Id.* § 1225(a)(1) (citation modified). Under § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." If Petitioner is detained under § 1225(b)(2)(A), he is not entitled to a bond hearing.

On the other hand, § 1226(a) more generally authorizes detention of a noncitizen pending removal proceedings and entitles the noncitizen to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))). However, for limited circumstances under § 1226(c), ICE

"shall take into custody" noncitizens who are inadmissible or deportable because they have committed certain criminal offenses. 8 U.S.C. § 1226(c)(1)(A)–(C).

**1. Respondents have not shown Petitioner's prior convictions trigger mandatory detention under § 1226(c).**

Petitioner challenges as unlawful his ICE detention "without a meaningful bond hearing," Pet. at 2, which the undersigned liberally construes to allege he is entitled to a bond hearing under § 1226(a). Pet. at 7. Respondents contend Petitioner is properly detained under § 1226(c). Resp. at 10-11. "The Attorney General shall take into custody any alien who is inadmissible by reason of having committed any offense covered in [8 U.S.C.] section 1182(a)(2)." 8 U.S.C. § 1226(c)(1)(A). Specifically, Respondents allege Petitioner is subject to mandatory detention under § 1226(c)(1)(A) because he "is inadmissible by reason of having committed an offense" under § 1182(a)(2)(a)(i)(I) for "a crime involving moral turpitude." Resp. at 10-11. The Tenth Circuit has characterized "moral turpitude" as "conduct which is inherently base, vile, or depraved, contrary to the accepted rules of morality," and further ruled "corrupt scienter is the touchstone of moral turpitude." *De Leon v. Lynch*, 808 F.3d 1224, 1228 (10th Cir. 2015) (citation modified); *see also Efagene v. Holder*, 642 F.3d 918, 921-22 (10th Cir. 2011) (explaining "as the BIA has held, for an offense to involve moral turpitude, it must require a reprehensible or despicable act" and "necessarily involves an evil intent or maliciousness in carrying out the reprehensible act") (citation modified).

Respondents contend Petitioner's convictions in 2025 for Aggravated Driving While Under the Influence and Driving without a Valid License "should qualify as crimes

involving moral turpitude." Resp. at 10. Respondents cite only case—a Seventh Circuit decision—to support their argument. *Id*. (referencing *Portillo-Rendon v. Holder*, 662 F.3d 815, 816 (7th Cir. 2011) ("Driving while intoxicated or without a license reflects both indifference to the welfare of other drivers and pedestrians and defiance of known legal obligations.")). Respondents, though, have not established an Oklahoma conviction for either offense qualifies as an offense for "a crime involving moral turpitude."

The undersigned is not aware of any Tenth Circuit caselaw directly on point; nor did Respondents cite any decision of this Court or the Tenth Circuit. Courts outside the Circuit, though, have uniformly ruled an offense for driving under the influence ("DUI")—absent an additional element of the driver's knowledge of his restricted driving status—does *not* qualify as a crime involving moral turpitude. In *Marmolejo-Campos v. Holder*, the Ninth Circuit examined the BIA's consideration of DUI offenses and noted:

> The BIA has never held that a simple DUI offense is a crime involving moral turpitude, a fact it attributes to a long historical acceptance. Although the dangers of drunk driving are well established, the Board's unwillingness to classify it as a crime of moral turpitude is, perhaps, not surprising because statutes that prohibit driving under the influence typically do not require intent, but rather "are, or are most nearly comparable to, crimes that impose strict liability." *Begay v. United States*, 553 U.S. 137, 145 (2008); *id*. ("[T]he conduct for which the drunk driver is convicted (driving under the influence) need not be purposeful or deliberate."); *see Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004) (stating that a DUI offense involves "accidental or negligent conduct")

558 F.3d 903, 913 (9th Cir. 2009) (citation modified);[3] *see also Murillo-Salmeron v. I.N.S.*, 327 F.3d 898, 902 (9th Cir. 2003) (noting "the BIA has unequivocally determined . . . simple DUI convictions, even if repeated, are not crimes of moral turpitude" requiring mandatory detention for noncitizens under § 1226(c)(1)(A)) (citation modified).

Other district courts have similarly ruled. *See, e.g.*, *Espada Hernandez v. Warden of Adelanto ICE Processing Ctr.*, No. 26-CV-2231, 2026 WL 1362396, at *7 (C.D. Cal. May 11, 2026) (concluding "the crime of driving under the influence does not qualify as an aggravated felony or crime involving moral turpitude requiring mandatory detention under the [INA]"); *Navarrete v. Noem*, No. 26-CV-320, 2026 WL 538365, at *7 (M.D. Pa. Feb. 26, 2026) (finding a "single driving under the influence charge does not concern moral turpitude and would not even conditionally bar a finding of good moral character under the INA"); *Perez v. Chestnut*, No. 26-CV-900, 2026 WL 381022, at *1 (E.D. Cal. Feb. 11, 2026) ("While 8 U.S.C. § 1226(c) carves out an exception for aliens who have committed certain criminal offenses, driving under the influence is not one of those criminal offenses."). *Cf. Marmolejo-Campos*, 558 F.3d at 912, 917 (concluding the BIA's "determination—DUI offenses committed with the knowledge that one's driver's license has been suspended or otherwise restricted are crimes involving moral turpitude—is a reasonable interpretation of the INA," when assessing an Arizona statute for aggravated

---

[3] In *Marmolejo-Campos*, the Ninth Circuit applied the categorical and modified categorical approaches set forth in *Taylor v. United States*, 495 U.S. 575 (1990).

DUI that required "the state to prove that the offender drove with a suspended or otherwise revoked license, and that he knew or should have known of the suspension or revocation").

Here, Petitioner's conviction for Aggravated Driving While Under the Influence required proof that his blood alcohol concentration was at least 0.15%, much higher than the standard DUI limit of 0.08%. *See* Okla. Stat. tit. 47, § 11-902(D)(1); Resp. at 10. While certainly dangerous conduct, a conviction under the aggravated DUI statute does not require proof of any purposeful intent or knowledge. *See De Leon*, 808 F.3d at 1228 (noting "corrupt scienter is the touchstone of moral turpitude"). For the same reason, Petitioner's conviction for Driving without a License does not require any purposeful intent or knowledge; nor have Respondents shown that offense reflects a sufficiently despicable act. *See, e.g.*, *Lopez Lopez v. Warden*, No. 26-CV-3556, 2026 WL 1346694, at *1 (E.D. Cal. May 14, 2026) ("The court has not identified any caselaw which supports the proposition that [Utah's offense for driving without a license] is a 'crime involving moral turpitude' nor have respondent.").

**2. The more general provision of § 1226(a) governs Petitioner's current detention.**

Because Respondents have not shown that § 1226(c) applies, the more general provision of § 1226(a) governs Petitioner's current detention. Without a qualifying conviction for a crime involving moral turpitude, Petitioner is a noncitizen like many others previously considered by the Court—apprehended by ICE in the interior of the United States after living in the country for more than two years. The Tenth Circuit recently applied § 1226(a) to govern detention of noncitizens like Petitioner. *Santillan Quiroz v.*

*Mullin*, 180 F.4th 1226, 1235-49 (10th Cir. 2026). In *Santillan Quiroz*, the Tenth Circuit concluded "those who entered the United States without admission and who have lived here since are categorically unable to seek admission while they remain in the country." *Id.* at 1239 (citation modified). Accordingly, "noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)." *Id.* at 1237. Therefore, based on Tenth Circuit precedent and this Court's prior reasoning in *Munoz v. Holt*, No. CIV-25-1190-G, 2026 WL 2200433, at *3 (W.D. Okla. July 30, 2026), the Court should apply § 1226(a) to govern Petitioner's current detention. *See He v. Blanche*, No. CIV-26-1435-G, 2026 WL 2296120, at *2 (W.D. Okla. Aug. 10, 2026) (holding in accordance with *Santillan Quiroz* that a similarly situated petitioner is entitled to a bond hearing under § 1226(a)).[4]

Further, Petitioner's unsuccessful application for asylum does not change the analysis or render him "seeking admission" and thereby subject to § 1225(b)(2)(A).

---

[4] This conclusion is also in accord with persuasive authority in the First, Second, Third, Sixth, Seventh, Ninth, and Eleventh Circuits, which rejected Respondents' statutory interpretation of § 1225(b)(2). *See Buele Morocho v. Warden Phila. FDC*, No. 26-1150, --- F.4th ----, 2026 WL 2546223, at *4 (3d Cir. Aug. 28, 2026); *Guerrero Orellana v. Moniz*, Nos. 25-2152, 26-1094, --- F.4th ----, 2026 WL 2352042, at *11 (1st Cir. Aug. 13, 2026); *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909, 915 (7th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1285 (11th Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th Cir. 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026). In contrast, the Fifth and Eighth Circuits recently applied § 1225 to similar habeas challenges, agreeing with Respondents' position. *Avila v. Bondi*, 170 F.4th 1128, 1134-38 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498, 502-08 (5th Cir. 2026). Respondents have filed a petition for a writ of certiorari to the Supreme Court. *See* Cert. Pet., *Raycraft v. Lopez-Campos*, No. 25-1415 (filed June 22, 2026); Cert. Pet., *Cunha v. Freden*, No. 26-104 (filed July 23, 2026).

*Santillan Quiroz*, 180 F. 4th at 1239 (holding a noncitizen "cannot make a present request for permission to enter the United States, lawfully or otherwise, once he or she has already entered" and "the only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border" (citation modified)).

**D. The proper remedy is a bond hearing.**

Petitioner asks the Court to "require Respondents to justify [his] continued detention" and to "order an immediate custody review or bond hearing" before an IJ. Pet. at 7. The undersigned concludes that a bond hearing before an IJ is the proper remedy for a noncitizen detained under § 1226(a). *See Santillan Quiroz*, 180 F.4th at 1251 n.13 ("Because Santillan Quiroz can properly be subject to detention under § 1226(a) . . . the district court shall order the Government to, within seven days of such order, either provide him with a bond hearing or else release him."); *see also Karimov v. Cerna*, No. CIV-26-304-R, 2026 WL 950130, at *1 (W.D. Okla. Apr. 8, 2026) ("An individualized custody redetermination hearing would provide Petitioner with the process he is due under the statute.").

Further, Judges in this District, including this Court, have consistently declined to order burden shifting. *See, e.g., Sow v. Cerna*, No. CIV-26-1376-G, 2026 WL 2302462, at *2 (W.D. Okla. Aug. 10, 2026) (declining to address a petitioner's burden-shifting claim); *Guzman Morales v. Mullin*, No. CIV-26-587-SLP, 2026 WL 1962374, at *2 (W.D. Okla. July 7, 2026) (same). Therefore, the Court should grant the Petition in part and order Respondents to provide Petitioner with a bond hearing under § 1226(a) before a neutral IJ

within seven days or otherwise release him if he does not have a lawful bond hearing within that period.

## V. <u>Recommendation and Notice of Right to Object</u>

For the foregoing reasons, the undersigned recommends that the Court **GRANT in part** the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within seven days or otherwise release Petitioner if he has not received a lawful bond hearing within that period.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed not later than **September 16, 2026**. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **September 21, 2026**. *See* Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 9th day of September, 2026.

Chris M. Stephens
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE